1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | . | Criminal No. 1:20cr24 |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | July 21, 2020 |
| HON LAM LUK, | . | 9:29 a.m. |
| | . | |
| Defendant. | . | |
| | . | |

. . . . . . . . . . .

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:            BIBEANE METSCH, AUSA
                               United States Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, VA 22314


FOR THE DEFENDANT:             STEVEN DAVID STONE, ESQ.
                               ALFREDO ACIN, ESQ.
                               Offit Kurman, P.C.
                               8000 Towers Crescent Drive
                               Suite 1400
                               Tysons Corner, VA 22182


OFFICIAL COURT REPORTER:       ANNELIESE J. THOMSON, RDR, CRR
                               U.S. District Court, Third Floor
                               401 Courthouse Square
                               Alexandria, VA 22314
                               (703)299-8595




(Pages 1 - 14)



COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1                    P R O C E E D I N G S
2                       (Defendant present.)
3            THE CLERK:  Criminal Case 20-24, United States of
4  America v. Hon Lam Luk.  Would counsel please note their
5  appearances for the record.
6            MS. METSCH:  Good morning, Your Honor.  Bibeane
7  Metsch on behalf of the United States.
8            THE COURT:  All right.  Good morning.
9            MR. STONE:  Good morning, Your Honor.  Steven Stone
10 on behalf of the defendant, and also my associate, Mr. Acin, is
11 here also.
12           THE COURT:  All right.  Mr. Stone, you may take your
13 mask off if you want to since we've got the plexiglass.
14           All right.  Have you had enough time to go over the
15 presentence report yourself and with your client?
16           MR. STONE:  Yes, Your Honor.
17           THE COURT:  Are there any factual corrections,
18 changes, additions, or deletions you want made to the report
19 itself?
20           MR. STONE:  No, Your Honor.
21           THE COURT:  All right.  Then as you know, the
22 Probation Office calculated the offense level as a 27.  Your
23 client has a criminal history of I.  There are two counts of
24 conviction.  Count 1 has a -- and both counts have the same
25 guideline range of 70 to 87 months.  There's a $100 special

1  assessment per count of conviction.

2  　　　　As to Count 1, the period of supervised release is
3  two to five years.  As to Count 2, it's a period of one to
4  three years.  The fine range for Count 1 is $25,000 to
5  $10 million, and the fine range for Count 2 is $25,000 to
6  $1 million.

7  　　　　My understanding is that you are not disputing those
8  calculations.

9  　　　　MR. STONE:  That's correct.

10  　　　　THE COURT:  In addition, the government has filed a
11  motion in which they are recommending a sentence between 46 and
12  57 months, and my understanding from your position is you're
13  not disagreeing with that recommendation.

14  　　　　MR. STONE:  That's correct, Your Honor.  We're, we're
15  appreciative of the United States' recommendation.

16  　　　　THE COURT:  All right.  Then let me hear first from
17  the United States anything you want to add in terms of a
18  sentence.

19  　　　　MS. METSCH:  Good morning, Your Honor.

20  　　　　THE COURT:  You may take your mask off if you want
21  to.

22  　　　　MS. METSCH:  Okay.  Thank you, Your Honor.  I
23  appreciate it.

24  　　　　Your Honor, the defendant's offenses are very
25  serious.  He distributed and possessed a significant amount of

1  tablets that were a mixture or substance containing a
2  detectable amount of methamphetamine over a period of months,
3  and he also possessed with intent to distribute a significant
4  quantity of MDMA.  These actions endangered people in a local
5  community and across the nation.
6        He also convinced his wife to become involved when he
7  was out of the country, and she had a far more limited time
8  than the defendant and was never compensated.  The defendant
9  was not, however, the source of the supply, and he was also not
10 someone with a proprietary stake in the vendor that was selling
11 these tablets.  He's been cooperative since his arrest, and he
12 has no prior criminal history.
13       He also has a supportive family and has a significant
14 amount of education and financial support from his family.  He
15 had ample opportunities to pursue legitimate means, but
16 instead, he decided to pursue this venture that was quick and
17 easy money that endangered other people.
18       So for these reasons and the others set forth in the
19 government's submissions, the government submits that a
20 sentence in the range of 46 to 57 months is sufficient but not
21 greater than necessary to satisfy the sentencing factors.
22       THE COURT:  All right.  Thank you.
23       Mr. Stone, we'll hear then from you.
24       MS. METSCH:  Thank you, Your Honor.
25       MR. STONE:  May it please the Court.  We have -- my

1   client has cooperated with the United States since his arrest,
2   beginning with his arrest, and as Your Honor knows, he has
3   provided what we believe is significant information that was
4   helpful to the United States.
5           Before my client became involved in this matter, he
6   was working in a variety of jobs, had moved from restaurant to
7   trying to have an online business, and as he has acknowledged,
8   he committed these acts, he agreed when he was approached by
9   what he believed to be his, his friends, and he's learned about
10  choosing friends a lot more wisely, but he did agree.  He did
11  participate in this.  He did do this, and then -- and he
12  recognizes the horrific mistake that he has made.
13          He is 33 years old.  As I think Your Honor knows from
14  the report, he's the product of a stable, hard-working family.
15  Both his parents are here today to indicate their continuing
16  support of their son.  His mother and father have been taking
17  care of his five-year-old son during this time, and also during
18  the time of incarceration, he has had a -- a second son was
19  born.
20          His parents, Mr. Luk's parents are amazing people,
21  coming to this country from Hong Kong, working very hard to
22  raise a good family.  Obviously, there's disappointment.  My
23  client has apologized profusely to his parents.  He recognizes
24  the undue burden that he's placed upon them by his own actions,
25  and this has been a total wake-up call for him about life, and

1  he believes, as he will speak to you, that he can turn his life
2  around and meet his true responsibilities, which are to his two
3  sons and to his parents, who will be retiring in the near
4  future.  They have done much for him, and he wants to come and
5  do much for them.
6              He takes full responsibility again, Your Honor, for
7  everything that's occurred here.  What I can say to agree with
8  the United States is he was not the maker of this, he was not
9  the supplier of this, but he did participate in this terrible
10 conspiracy.
11             So he understands that he must pay a debt to the
12 United States and he must serve as -- a punishment, but also
13 what he hopes to do during whatever time Your Honor assigns to
14 him in the prison system is to begin to make that new life by
15 studying and looking at changes of career and in this new
16 environment, hopefully, when we come out of this pandemic,
17 there will be new opportunities for jobs, there will be some
18 jobs that don't exist anymore.  The restaurant business that he
19 spent significant time in has suffered perhaps the most of a
20 lot of the economic sectors, so he's going to have to look for
21 other things, and that's why he wants to look at all training
22 programs and psychological assistance that he can receive while
23 he is serving his time in incarceration.
24             The last thing I would say is that his participation
25 and the assistance that he provided to the United States shows,

1  we believe, that he recognizes the horrific acts that he has
2  committed and that he wants to do and has done whatever he can
3  to try and set things right, and we very much appreciate the
4  United States' recommendation for a further downward revision
5  if Your Honor will accept that based upon his cooperation.
6        So we would ask Your Honor for the 46 months that's
7  recommended by the United States.  We would ask for a period of
8  supervised probation of three years.  We'd like to discuss a
9  placement with Your Honor also.
10       And as Your Honor knows, at this point, he is not
11 employed.  He has unfortunately a negative net worth because of
12 some credit card debt, and so at this point in time, he has no
13 funds to make payments.  He does have to pay the assessment, as
14 we know, but we would ask that Your Honor take into
15 consideration the current financial mess that he has created
16 for himself in considering what an appropriate fine would be or
17 not be.
18       THE COURT:  All right.  Thank you, Mr. Stone.
19       MR. STONE:  Thank you, Your Honor.
20       THE COURT:  All right.  Mr. Luk, you may come up to
21 the lectern.  You may take off your mask if it makes you more
22 comfortable.  All right.
23       This is your chance to say anything you'd like the
24 Court to consider before sentence is imposed.
25       THE DEFENDANT:  Okay.  Thank you, Your Honor.  I want

1  to take this time to apologize to my parents.  I didn't grow up
2  from a wealthy family, but my parents worked hard their whole
3  life to raise me.
4         When my family immigrated to America 20 years ago,
5  they gave up everything and started over, and they barely speak
6  any English, and now we have a house to call home.  I remember
7  my mom will always tell me if I work hard and stay on the right
8  track, I can get whatever I want, but I didn't listen to her,
9  and I'm sorry I have disappointed them.
10         I also want to apologize to my two sons, Davin and
11  Alex.  Because of my mistake, they will be missing their
12  father.  In the past nine months, I have missed Davin's
13  birthday, I have missed his graduation from preschool, and I
14  wasn't there when my young son, Alex, was born.  And it hurts
15  me every time when my son asks me when am I coming home.  I can
16  only answer him, "I'll be home soon."
17         I have let down, too, all of my friends and family.
18  I make the biggest mistake of my life, and all my loved ones
19  have to suffer with me, and I'll be very careful in my choice
20  of friends in the future.
21         I have accepted responsibilities, and I've learned
22  from my mistake, and I have assisted the United States with the
23  best of my knowledge, and I will continue to do so whenever I'm
24  required.
25         I will use this time to learn a new skill and start a

1   new career as a computer technician.  I'll be taking programs
2   about computer and continue my education.  I will also attend
3   parenting classes and learn to be a better father.  In
4   addition, I will work two to three part-time jobs to earn extra
5   money so I can support my parents when they retire.
6           I have learned that there's no shortcuts in life.
7   I'm very fortunate to have friends and family that are
8   supportive to me.  I just hope that I can get a second chance,
9   and I'll be a better person, and I'll make smarter decisions in
10  the future.
11          THE COURT:  All right.  Well, it is unfortunate,
12  Mr. Luk, that you find yourself in this position, because you
13  do have a criminal history I, and, you know, that would have
14  gotten you in a good situation but for the nature of the crime,
15  which is a serious crime.  And it went on, you know, it wasn't
16  just once or twice.
17          Plus, you involved another person in it.  You know,
18  your wife would not have been involved, and now she's also got
19  problems.
20          So it is a serious case, but I do think given the
21  cooperation with the United States and the fact that you have
22  the criminal history I, that the lower sentence recommended by
23  the government is appropriate.
24          So the Court is sentencing you to 46 months in the
25  custody of the Bureau of Prisons, with credit against that

10

1  sentence for the time you've been serving in custody.

2  I'm going to recommend that that sentence, that you
3  be permitted to enroll in the RDAP program, that is, the
4  intensive drug treatment program, which if you can get into the
5  program, does have the benefit of getting you out a little bit
6  sooner into the community.  That 46-month sentence is
7  concurrent; that is, it runs on both counts at the same time.

8  When you complete the 46-month sentence, you will
9  serve three years of supervised release, again concurrent on
10 each of the two counts.  The terms and conditions of your
11 supervised release are first of all your uniform good behavior,
12 which means you cannot violate any federal, state, or local
13 laws, and that includes traffic laws.

14 Do you understand that?

15 THE DEFENDANT:  Yes, Your Honor.

16 THE COURT:  Secondly, you have to follow all the
17 standard conditions of release that are printed on the judgment
18 order and will be explained to you by the probation officer.
19 Do you understand that?

20 THE DEFENDANT:  Yes, ma'am.

21 THE COURT:  Now, as special conditions of
22 supervision, you must be drug free.  You will have to submit to
23 such drug testing as directed by the Probation Office and
24 participate in such in- or outpatient drug treatment as
25 directed.

1          Do you understand that?

2          THE DEFENDANT: Yes, ma'am.

3          THE COURT: You will need to pay the costs of testing
4  and treatment to the extent you are able, and you will have to
5  waive any privacy rights that you have to the testing and
6  treatment program so the probation officer can monitor your
7  compliance. Do you understand that?

8          THE DEFENDANT: Yes, Your Honor.

9          THE COURT: Number two, you are to avoid associating
10 with any people who are using or dealing illicit drugs. Do you
11 understand that?

12         THE DEFENDANT: Yes, Your Honor.

13         THE COURT: And three, you're to provide access to
14 any and all financial information as requested by the Probation
15 Office. This is to make sure that there's not some unexplained
16 source of income that might suggest that you are getting back
17 into the drug-dealing business.

18         Do you understand that?

19         THE DEFENDANT: Yes, Your Honor.

20         THE COURT: The Court finds that because of your
21 financial situation, you are unable to afford the costs of
22 incarceration, any other costs of supervision, or any of the
23 statutory fines, but the $100 special assessment per count of
24 conviction is required by law, so there's a total of $200 of
25 special assessments that you must pay.

```
 1              Do you understand that?
 2              THE DEFENDANT:  Yes, ma'am.
 3              THE COURT:  And lastly, I want to advise you that
 4   even though you pled guilty under a plea agreement in which you
 5   basically waived your right to appeal, counsel, Mr. Stone, you
 6   are advised that you must consult with your client about
 7   whether he wants to file an appeal of either his sentence or
 8   his conviction, and if he indicates that he wants to, then
 9   within 14 days of today's date, a notice of appeal must be
10   filed.
11              Do you understand that, Mr. Stone?
12              MR. STONE:  Yes, Your Honor.
13              THE COURT:  All right.  And do you understand that,
14   Mr. Luk?
15              THE DEFENDANT:  Yes, Your Honor.
16              THE COURT:  All right.  Is there anything further --
17   oh, Mr. Stone, you indicated that you want to talk about a
18   designation.  I assume you want something as close to this area
19   as possible?
20              MR. STONE:  Well, yes.  Not necessarily the closest.
21   We were going to --
22              THE COURT:  Hold on one second.  I'll ask the
23   defendant to go back to his seat.  It's difficult to hear
24   through the masks, so once he's back, you go to the lectern.
25              Yes, sir.
```

1          MR. STONE:  Thank you, Your Honor.  It's difficult to
2   talk with the mask, too.
3          We were going to ask for Morgantown, which is within
4   a -- would allow his family to visit him on a daily basis but
5   also, we believe, has programs that would be good for him.
6          THE COURT:  All right.  Again, given the nature of
7   what's going on with the COVID, I have no idea, you know, if
8   Morgantown is accepting people at this point.  I'll certainly
9   put that recommendation in the judgment order, but you need to
10  understand that these days, there's no knowing where anyone is
11  going to go.
12         MR. STONE:  I do understand that --
13         THE COURT:  All right.
14         MR. STONE:  -- and I appreciate Your Honor including
15  that.
16         THE COURT:  All right.  We will include that.
17         Is there anything further we need to address?  How
18  about from the prosecution?
19         MS. METSCH:  No, Your Honor.
20         THE COURT:  Nothing further?
21         MS. METSCH:  Nothing further.
22         THE COURT:  All right.  Then we have -- we'll go
23  ahead and we will recess court until 10:00.
24                          (Which were all the proceedings
25                              had at this time.)

```
                                                                    14

 1                       CERTIFICATE OF THE REPORTER

 2        I certify that the foregoing is a correct transcript of

 3   the record of proceedings in the above-entitled matter.

 4

 5

 6                                        _____/s/_____
                                               Anneliese J. Thomson
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```