FILED
MAILROOM

MAY 3 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA,  :  Case No. 1:20-cr-00024-001
                           :
            v.             :
                           :  Hon. Leona Brinkema
HON LAM LUK,               :
                           :
            Defendant.     :

## MOTION FOR MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Defendant, HON LAM LUK (hereinafter "Luk" or "Defendant"), appearing pro se, respectfully moves this Court for a modification of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) based on the combination of the COVID-19 pandemic, conditions of confinement resulting in PTSD, his inability to participate in RDAP and to prevent an unwarranted sentencing disparity. Mr. Luk asks the Court to impose a sentence of time served or alternatively, modify the remainder of his term of imprisonment to a special term of supervised release with a condition of home confinement. Mr. Luk would show the Court:

Mr. Luk pleaded guilty to a one count criminal information charging him with participating in a conspiracy to distribute controlled substances in violation of 21 U.S.C. §§§ 846, 841(a)(1), 841(b)(1)(C). [Exh. 1 - Declaration of Hon Lam Luk ("Decl."); Exh. 'A' - Sentence Computation]. On July 21, 2020 this Court sentenced Mr. Luk to 46 months imprisonment, followed by 3 years of supervised release. Id. He has a current projected release date of March 15, 2023 based on earning the maximum amount of Good Conduct Time pursuant to 18 U.S.C. § 3624(b) and a Home Confinement eligibility date of October 27, 2022. Id. Had he been permitted to participate in RDAP, he would have been eligible to receive one year off his sentence pursuant to 18 U.S.C. § 3621(e) advancing his release ate to March 15, 2022 and a Home Detention Date of October 27, 2021. id.

As the country sits at a cautiously hopeful moment with COVID-19 cases reduced and vaccinations rising, there can be no dispute that over the last year, Mr. Luk has suffered through conditions of confinement neither anticipated nor intended by anyone in the criminal justice system. Inmates

like Mr. Luk have had to survive the tangible effects of drastic lockdown conditions, confined to their cells and entirely cutoff from friends and family.  Necessary precautions left inmates at the prison camp where he is currently confined locked down for months at a time, often only allowed out of their small cells for enough time to shower every other day.  Similarly, he experienced the same situation while confined at the county jail in connection with this case.

The psychological impact upon Mr. Luk has been intense.  Despite avoiding the virus (unlike one-third of the inmates at Lewisburg, and over 70 staff(, he had to live with the fear and anxiety and developed PTSD.  Thankfully, he was recently vaccinated, which certainly reduces the risks associated with COVID.  As the prison attempts to return to some sense of normalcy, it cannot erase the terror that inmates like Luk experienced during the last year of incarceration.  Mr. Luk has endured this pandemic unable to control the various aspects of defense that most people have been able to emply, such as viligent sanitation, adequate mask-wearing and social distancing.

The current COVID pandemic has forced the criminal justice system to examine the inhumane conditions of the jails and prisons.  Luk has served over 19 months in prison (with good time credits), 7 months in a harsh county jail, and has been a model inmate from the moment of his arrest. He has completed some rehabilitative classes, however due to COVID and being in the county jail, not many.  The still present risk with his mental health which weakens his immune system, his significant rehabilitation, unprecedented conditions of confinement and the unwarranted sentencing disparity in combination present "extraordinary and compelling reasons" that counsels the Court's exercise of authority to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

On March 3, 2021 Mr. Luk hand delivered to his correctional counselor on behalf of the Warden a Request for Compassionate Release. ⌊Exh. 'B'⌋.  The Warden acknowledged receipt on March 9, 2021 and subsequently denied the request. Id. p.2.

Mr. Luk asks this Court considering the combination of his PTSD, the conditions of confinement, the unwarranted sentencing disparity, his positive rehabilitation, and his inability to participate in RDAP to grant his a modification to time served or a 'special term' of supervised release for the remainder of his sentence.

2

I.    The First Step Act Grants the Court Broad Authority to
      Modify a Sentence.

The First Step Act of 2018 ("FSA"), 132 Stat. 5194 (Dec 21, 2018), amended the provisions of 18 U.S.C. § 3582(c)(1)(A) granting the courts with broad authority to modify a sentence upon consideration of the 18 U.S.C. § 3553(a) sentencing factors when "extraordinary and compelling" reasons so warrants.

"A court may then 'reduce the term of imprisonment' after finding that 'extraordinary and compelling reasons warrant such a reduction' and 'such reduction a reduction is consistent with applicable policy statements issued by the Sentencing Commission." United States v. Brooker, 976 F.3d 228 (2d Cir. 2020). In making the decision, a court must also consider "the [sentencing] factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. §3582(c)(1)(A).

Section 3582(c)(1)(A) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, No. 20-6821, 981 F.3d 271, 275 (4th Cir. 2020). That task was left to the United States Sentencing Commission. "[i]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)... [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The statute sets forth the only exclusion is "rehabilitation alone shall not constitute extraordinary and compelling reasons." id.

Prior to the First Step Act, the Sentencing Commission established four categories of extraordinary and compelling reasons for sentence reduction as directed by Congress. Those categories generally focus on the defendant's age, medical condition, family situation, and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 comment. (n. 1). The four categories have not been updated since December 2018 when the First Step Act became law.

The United States Courts of Appeals for the Second, Fourth, Fifth, Sixth, Seventh Ninth and Tenth Circuits have addressed the court's authority under the First Step Act.  See United States v. Brooker, 976 F.3d 228, 234-37 (2d Cir. 2020), United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020), United States v. Shkambi, No. 20-40543, United States v. Jones, 980 F.3d 1098, 1109 (6th Cir. 2020), United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020), United States v. Aruda, No. 20-10245 (9th Cir. Apr. 8, 2021), United States v. McGee, No. 20-5047, 2021 WL 1168980 (10th Cir. Mar. 29, 2021).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." Brooker, 976 F.3d at 234.  The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." Id.  The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at 235.  "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13 limits the district court's discretion." Id. at 237; see also Gunn, 980 F.3d 1099 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones ("in cases where incarcerated persons file motions for compassionate release, federal judges ... have full discretion to define 'extraordinary and compelling' without consulting the policy statement 'applicable' to the defendants' compassionate release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

Thus the court retains independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 937 F.3d at 237.  See also McCoy, (same), Jones (same), Gunn (same), McGee (same), Aruda (same), Shkambi (same).  Thus the purpose of the First Step Act was to expand

4

the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

## II.  Defendant Has Exhausted His Administrative Remedy

Defendant has exhausted his administrative remedies.  The FSA expressly permits the defendant to move this Court to seek compassionate release by which this Court may reduce his term of imprisonment upon an amended judgment.  18 U.S.C. § 3582(c)(1)(A)(i).  United States v. Alam, 960 F.3d 831, 822 (6th Cir. 2020).  A defendant can seek recourse through the Court after either (1) the BOP declines to file such a motion on his behalf; or (2) there has been a lapse of 30 days from the Warden's receipt of the defendant's request, whichever is earlier. Id.

Defendant filed his request with the Warden of FPC Lewisburg on March 3, 2021 by hand delivering it to his Correctional Counselor on behalf of the Warden. [Exhibit 'B', p. 1].  Subsequently the Warden acknowledge receipt and denied the request. Id. p. 2.  More than 30 days has elapsed which grants this Court authority to now modify his sentence.

## III.  Defendant Has Established Extraordinary and Compelling Reasons Warranting the Grant of His Compassionate Release

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position that any inmate who presents with any of the [elevated] risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction.  Of note, the CDC itself advises that it's listing of risk factors are not exhaustive. Indeed, its guidance regarding social distancing, masks and other mitigation measures were derived from the World Health Organization's guidance.

The Sentencing Guidelines under the § 1B1.13 recognizes that a defendant's mental health is an appropriative consideration for compassionate release.

A court when imposing sentence is required to consider the 18 U.S.C. § 3553(a)(6) factor and ensure that the sentence imposed does not result in an unwarranted sentencing disparity.  18 U.S.C. § 3553(a)(6).

A court's judicial recommendation is entitled to some deference. 18 U.S.C. § 3621(b)(4).

## A.  PTSD

The implementation of Mr. Luk's custodial sentence has changed from those anticipated at the time sentence was imposed.  As a result, Mr. Luk has been and continues to suffer from PTSD which was induced as a result of the changed conditions as outlined in this motion.  The fear, anxiety and stress in trying to avoid catching the COVID virus and inability to practice mitigation such as social distancing, good health and hygience, non-enforcement of the mask mandates and shared common areas have weakened his immune system and therefore has impacted his ability to fight off COVID if he were to become infected resulting in a fatal outcome.  Individuals without underlying health conditions have succumbed to COVID-19.  Each and every day the PTSD increases as new variants are discovered and have the strong possibility of entering the institution as a result of unvaccinated staff members that the BOP has refused to put them on leave until the pandemic subsides.  In addition there are now reports that the vaccines only offer 90 days of protection from the original strain of the virus and requires repeating booster shots which it is unknown when they will become available to prisoners.

Noteworthy under USSG § 1B1.13, a prisoner's mental health may for the basis for compassionate release.  Mr. Luk acknowledges his medical records do not reflect his PTSD.  However, this is emblematic of the inadequate medical care being provided and when care is sought, the individuals who are responsible for providing that care have serious attitude issues and show a complete lack of professionalism.  Moreover, as a result of the lockdown conditions, staff have been unavailable to diagnose or provide treatment to any inmate in this area.

Accordingly, Courts have granted relief to prisoners who suffer from PTSD. See <u>United States v. Lacy</u>, No. 15-cr-30038, 2020 U.S. Dist. LEXIS 76849 (C.D.

Ill. May 1, 2020); <u>Doe v. Barr</u>, No. 20-cv-02141, 2020 U.S. Dist. LEXIS 64459 (N.D. Cal. Apr. 12, 2020)(ordering the release of a foreign national, detained in county jail awaiting for his removal proceedings, in part because he suffers from PTSD and "[g]rowing evidence demonstates that PTSD, anxiety/stress, and depression can lead to deceased immune response and increased risk of infections" and thus "compound his susceptibility" to COVID-19).

### B.  Conditions of Confinement

The Camp's most recent outbreak of COVID-19 had more than 88 inmates acutely infected determined by antigen rapid response nasal swab results.  The total sum of COVID-19 positive camp inmates from December 10, 2020 may have been updated on the BOP website, https://www.bop.gov/coronavirus/index.jsp.

As a result of the outbreak, the entire prison population was moved into the USP and placed in cells used for solitary confinement for quarantine. While in the USP the number of positive inmates increased, while those who tested positive were discharged and they were again re-housed with those who had tested negative.  When the institution re-housed those inmates who tested positive and negative together, they created a "human petri dish" situation and a perilous one for those with a risk of death or serious complications, such as defendant.

Continuing to reside at the Camp with an active population with a high number of positively infected inmates, coupled with staff egressing and ingressing into the institution places Defendant's life in jeopardy and would constitute cruel and unusual punishment.  Not withstanding the reports of variants of the COVID-19 being more easily transmissible.

The dorms in which Defendant resides at the Camp physically abuts the USP. Staff, facilities, vendors, inmate workers and delivery personnel are shared between the Camp and USP.  To date, it is estimated more than 88 cases of the COVID-19 have erupted at the Camp to include staff and inmates.  It's worth noting that Defendant working as a Laundry Orderly which puts him at more risk.

7

Defendant lives in a poorly ventilated building that is a human vector for infectious spread.   The dormitory style unit Defendant endures is a "super spreader" setting because of its densely populated and shared common facilities.   Social distancing is impossible. Inmates share common living areas, eating areas, showers, sinks, toilets, phones, computers, recreation equipment and laundry facilities.   The ability to adhere to strict hygiene is impossible and cleaning agents are scarce with chlorine and alcohol based products not permitted in penal setting.

The crowded dormitory prison style setting at the Camp presents a "massive incubator" for viral transmission and infectivity among the inmates.   This coupled with the influenza season, cold weather in Pennsylvania and variants makes transmission more common and likely.   The institution has began the process of substantially increase the number of prisoners at Lewisburg from it's almost 500 prisoners to more than 791 increasing the danger.

The camp is a minimum security setting and only those prisoners who pose no danger, are trusted and not likely to engage in criminal conduct are designated to prison camps. The camps have no fences, physical barries, metal detectors or guards.   The camp in essence comprises of trustees and an honor system to remain imprisoned and not walk off or escape.   At prison camps inmates such as Defendant have direct access to the community.  As demonstrated by Defendant's custody classification scoring [Exhibit 'E'] and his Low pattern score [Exhibit 'F'], he poses a Low risk of recidivism and no danger to the community based on their assessments.

## C.   Inability to Participate in RDAP

In fashioning the sentence, the Court recommended that Mr. Luk be afforded the opportunity to participate in RDAP programming during his custody due to his susbstance abuse problem identified in his PSR and self-reported.

The institution Drug Abuse Coordinator, Dr. Ramirez, a non-medical dcotor denied Mr. Luk the ability to voluntarily participate in RDAP. Exh. 'D'.   As shown by the denial form, Dr. Ramirez refused to allow Luk to participate

8

falsely claiming that there is no evidence of a substance abuse problem in his PSR.[1] Mr. Luk does have a substance abuse problem, the Court recognized that hence it's recommendation and self-reported his problem in trying to get assistance to address the problem head on.

As a result of the arbitrary and capricious decision[2] of Dr. Ramirez, Mr. Luk was denied the ability to participate in RDAP which would have resulted in his release one year earlier which the Court took into consideration in fashioning the sentence imposed.

Since Mr. Luk will not be able to earn the one year, and the Court recognized that he would earn the one year off, it is appropriate for the Court to consider modifying his sentence for that reason.

## D. Unwarranted Sentencing Disparity

Mr. Luk was the first individual to accept responsibility, pled guilty and sentenced to 46 months imprisonment due in part to a failure on the part of counsel to provide the Court with sentencing statistics from the Sentencing Commission. The sentence that was imposed has resulted in an unwarranted and unjustified sentencing disparity. See Decl. & Decl. Exhibit DX1.

Under 18 U.S.C. § 3553(a)(6) the court is required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

In order to raise valid arguments, an attorney must meaningfully analyze the USSG datafiles (raw files) to determine whether or not the recommended sentence being portrayed by the government is disparate, or not, when compared to the defendant's with similar records. both in the same U.S Circuit where

---

[1] Many of the prisoners in the RDAP program and those volunteering to enroll have raised concerns about Dr. Ramirez's attitude problem, arbitrary and capricious decisions, false statements to inmates and other improper conduct to the region and Warden, however they have refused to take any action and allow the continued misconduct such as improper denial for RDAP.

[2] Pursing Administrative Remedy would be a frivolous process because (1) it is controlled by the BOP and is often utilized to conceal misconduct due to the blue wall; (2) there is an inadequate amount of time as it takes 6 months to exhaust, and no judicial review thereafter.

a putative defendant is to be sentenced, and then based on a national statistics. At Mr. Lunk's sentencing Defense counsel[3] made no argument to rebut the government's stance, nor did he consult with Mr. Luk prior to simply accepting 46 months as reasonable. Defense counsel was trounced at sentencing because of his lack of preparation, spawned by a lack of technical accumen necessary to analyze the Commissions datafiles meaningfully and gave up rather than seek expert assistance.

Certainly, as shown in Docket Entry DE 60 my co-defendant's counsel did his homework in preparation for that sentencing hearing. As shown by the memorandum filed on my behalf there was nothing of substance to support a reduced sentence nor did counsel make any effort to argue for a less harsher sentence which was certainly possible.

As shown by the Chart, Exh. DX1 to the Declaration are the sentences imposed in this case by the Court. The unwarranted disparity is evident simply based on the starting base offense level and roles in the offense. Mr. Luk's guideline was less than others, yet he received the same sentence as the others that were "investors" and played a larger role than he did in the conspiracy. In analyzing the sentence imposed in this case those two defendants with a final offense level of 27 received sentences of 5 years supervised release and the other 6 months home confinement, yet Mr. Luk received a sentence of 46 months. Mr. Luk acknowledges his role was somewhat higher than his two co-defendants with similar final offense level, however that did not warrant a 46 month sentence. The Government has conceded Mr. Luk's less role and culpability.

A sentence of 18-24 months either home confinement or imprisonment would have been an appropriate sentence for Mr. Luk.

## E. FSA Time Credits

Mr. Luk was committed to the Bureau of Prisons as per 18 U.S.C. § 3585 on October 21, 2020. At his intake he was determined to be eligible for First Step Act ("FSA") Time credits pursuant to 18 U.S.C. § 3632(d)(4)(A). He became eligible to begin earning 10 days of time credit for every 30 days

thereafter that he was participating and completing programs and productive activities. 18 U.S.C. § 3635(3)(C), et. seq. As shown by his Education Transcript and certificates he has been completing programs (Exh. G.), however the BOP has categorically refused to apply his credits as prescribed by the statute. Applying those credits would result in his release to Home Confinement or early supervised release by as much as one year. The institution, despite the Court rulings in <u>Goodman v. Ortiz</u>, NO. 20-cv-07582 (D.N.J. 2020); and <u>Hare v. Ortiz</u> (holding that FSA is retroactive to December 21, 2018), they have refused to make those credits available to prisoners and to calculate those credits manually because they are aware no sanctions will be imposed for their failure to comply with the law.

Based on his programming and productive activities recommended and constitute evidence based recidivism programs as described within the BOP's existing policy statement, I have accumulated more than 120 days of programming and productive activities credits.

Mr. Luk asks the Court to take this into consideration as part of it's analysis in deciding whether to reduce his sentence.

Accordingly, given the totality and combination of reasons, Mr. Luk has met his burden of demonstrating extraordinary and compelling reasons to modify his sentence as requested.

## V. The 3553(a) Factors Weighs in Favor of Release

Even where a court finds that extraordinary and compelling reasons exist warranting a sentence reduction, the court may not grant compassionate release unless it considers the reduction in light of the sentencing factors contained in 18 U.S.C. § 3553(A). The § 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

Mr. Luk acknowledges the seriousness of the conduct which is unquestionable, nevertheless it was non-violent. To that end Mr. Luk has sought treatment for his drug abuse problem, and participate in programs that

will improve his skills and his cognitive abilities. During the entire period of his incarceration, Mr. Luk has been a model inmate maintaining clear conduct and obtained a prison job, and has received reviews that have been without exception. This in turn bodes well that if granted release, he would be able to find a job and become a productive member of society. Exh. 'D'.

Disparity

The Court must consider "the need to avoid unwarranted sentence disparity among defendants iwth similar records who hae been found guilty of similar conduct." Id. § 3553(a)(6).

At sentencing, due to counsel's lack of preparation and discussion with Mr. Luk, the Court imposed a sentence that has resulted in an unwarranted disparity as outlined herein. Thus reducing Mr. Luk's sentence would redress the unwarranted disparity that resulted.

Release would not fail to provide just punishment for the offense

Defendant's continued incarceration would not fail to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).

The conditions of confinement has dramatically shifted and is not the same as contemplated when the Court imposed sentence. The lockdown measures prisons across the country like Lewisburg have undergone to mitigate (albeit a failure) the spread of the virus has made confinement much more punitive than was contemplated. https://www.bop.gov/coronavirus/covid19_status.jsp.

Defendant's continued incarceration with inadequate medical care would be disproportionate punishment for his admittedly serious non-violent crime.

Kinds of Sentences Available

Lastly, the Court must consider the kinds of sentences available. Compassionate Release was designed to provide relief to individuals who no longer posed a threat to society and uniquely suffer from a medical condition among other circumstances.

Given the totality of the circumstances, Mr. Luk asks this Court to grant his motion and impose a modified sentence of time served, or alternatiely, modify the sentence to a 'special term' of supervised release with a condition of home confinement via an amended judgment.

I declare the foregoing to be true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746.

Dated:  April 18, 2021                          RESPECTFULLY SUBMITTED,
                                                HON LAM LUK,


                                                Reg No. 93972-083
                                                Federal Prison Camp
                                                P O Box 2000
                                                Lewisburg, PA 17837

13